## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JUDY SESSAMAN,** | : | |
| | : | **CIVIL ACTION NO. 4:14-CV-1086** |
| Plaintiff | : | |
| | : | |
| **v.** | : | **(BRANN, J.)** |
| | : | **(SCHWAB, M.J.)** |
| **CAROLYN W COLVIN,** | : | |
| Commissioner of Social Security | : | |
| Administration | : | |
| | : | |
| Defendant | | |

## REPORT AND RECOMMENDATION

Plaintiff, Judy Sessaman, appeals from an adverse decision denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. 42 U.S.C. §§401 *et seq.* and 1381 *et seq.* ("the Act"). Jurisdiction is conferred upon this Court pursuant to 42 U.S.C. §§405(g), and 1383(c)(3)(incorporating 42 U.S.C. §405(g) by reference). This matter has been referred to the undersigned Magistrate Judge for the preparation of a report and recommended disposition pursuant to the provisions of 28 U.S.C. §636(b) and Rule 72(b) of the Federal Rules of Civil Procedure.

For the reasons stated herein, we recommend that the final decision of the Commissioner be **AFFIRMED**.

## I.   PROCEDURAL HISTORY

On September 28, 2012, Plaintiff protectively filed applications for DIB and SSI alleging that she was unable to work due to spinal stenosis, cervical spondylosis, degenerative disc disease, depression, sleep disorder, gastroparesis, anxiety, and mood disorder as of October 25, 2011.  Plaintiff's applications were initially denied on February 4, 2013.

Following the initial denial of her claims, Plaintiff requested, and was granted an administrative hearing.   On February 3, 2014, Plaintiff, with the assistance of a non-attorney representative, appeared and testified at a hearing before Administrative Law Judge ("ALJ") Michelle Wolfe in Wilkes-Barre, Pennsylvania.  Impartial vocational expert (VE) Carmine Abraham also appeared and testified at the hearing.  On February 28, 2014, the ALJ denied Plaintiff's applications in a written decision.

Plaintiff sought review of the ALJ's unfavorable decision by the Appeals Council.  On May 13, 2014, the Appeals Council denied Plaintiff's request for review making the ALJ's February 2014 decision the final decision of the Commissioner subject to judicial review.

On June 4, 2014, Plaintiff initiated this action by filing a complaint in which she asserts that the final decision of the Commissioner is not supported by substantial evidence, and is contrary to settled law.  *Doc.* 1.  Plaintiff requests that

this Court enter an order awarding benefits under both applications, or, in the alternative, remand this matter to the Commissioner for a new administrative hearing.  On August 22, 2014, the Commissioner filed an Answer in which she asserts that her final decision denying benefits is correct and in accordance with the law and regulations.  *Doc.* 10.  Together with her Answer, the Commissioner filed a copy of the administrative record.  *Doc.* 11.  Having been fully briefed by the parties, this matter is now ripe for disposition.  *Docs.* 14, 15.

## II.    ADMINISTRATIVE DECISION

In order to receive benefits under Title II or Title XVI of the Act, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a).

Furthermore:

[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means

work, which exists in significant numbers either in the region where
such individual lives or in several regions of the country.

42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B).   In addition to the above-listed requirements, to receive benefits under Title II of the Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

It is the responsibility of the ALJ to determine whether a claimant has met the statutory prerequisites for entitlement to benefits.   In making this determination the ALJ employs a five-step evaluation process to determine if a person is eligible for disability benefits.   *See* 20 C.F.R. §§404.1520, 416.920.   As part of this analysis the ALJ must sequentially determine: (1) whether the claimant engaged in substantial gainful activity after his or her alleged onset date; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents him or her from doing past relevant work; and (5) whether the claimant's impairment prevents him or her from doing any other work.   *Id*.   If the ALJ finds that a claimant is disabled or not disabled at any point in the sequence, review does not proceed any further.   *See* 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).   Moreover, between steps three and four of this process, the ALJ must determine the

4

claimant's residual functional capacity ("RFC") as explained in 20 C.F.R. §§404.1545 and 416.945.  20 C.F.R. §§404.1520(e), 416.920(e).

The claimant bears the initial burden of demonstrating that he or she has a medically determinable impairment that prevents him or her from engaging in past relevant work.  42 U.S.C. §423(d)(5); 42 U.S.C. §1382c(a)(3)(H)(i)(incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R.  §§404.1512, 416.912.   Once the claimant has satisfied his or her burden at steps one through four, it is incumbent upon the ALJ to show that jobs exist in the national economy, which the claimant could perform and that are consistent with his or her age, education, work experience, and RFC.  20 C.F.R. §§404.1512, 416.912.

In her decision, the ALJ completed steps one through five of the five-step sequential evaluation process.  She found that Plaintiff met the insured status requirement under Title II of the Act through December 31, 2013, but ultimately concluded that Plaintiff was not under a disability as defined by Title II or Title XVI of the Act at any time between her alleged onset date of October 25, 2011, and the date of the ALJ's written decision, February 28, 2014.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between her alleged onset date and the date of her written decision. *Tr.* 23.   At step two, the ALJ found that Plaintiff had the severe, medically determinable impairments of: cervical and lumbar transverse process fracture;

5

degenerative disc disease of the cervical spine status post discectomy and fusion; degenerative disc disease of the lumbar spine; carpal tunnel syndrome status post carpal tunnel release; degenerative joint disease of the knees; and, obesity. *Tr.* 23-25. The ALJ also found that Plaintiff had medically determinable, but non-severe, impairments of: gastro esophageal reflux disease ("GERD"); hypomagnesemia; gastroparesis; hematuria; plantar fasciitis; dermatitis; urge incontinence; trochanteric bursitis of the right hip; adjustment disorder; generalized anxiety disorder; and, depression. *Id.* At step three, the ALJ found that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Tr.* 26-27.

Before proceeding to step four, the ALJ considered the record as a whole, and determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§404.1567(b) and 416.967(b) except that Plaintiff could:

> occasionally balance, stoop, crouch, crawl, kneel and climb but never on ladders ropes or scaffolds. The claimant could do occasional pushing and pulling with the upper extremities. The claimant could do frequent grasping, handling, fingering and feeling for both gross and fine manipulation. The claimant must avoid temperature extremes of cold, wetness, vibrations and hazards, such as moving machinery and unprotected heights.

*Tr.* 27.

At step four, the ALJ found that Plaintiff is capable of performing her past relevant work as a cafeteria worker. *Tr.* 32-34. Despite her conclusion at step four that Plaintiff was "not disabled" at step four, the ALJ also addressed the issue of whether Plaintiff could engage in "other work" at step five. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and the above RFC, Plaintiff would also be able to make a successful adjustment to other work that exists in significant numbers in the national economy. The ALJ's conclusion is based on testimony by a VE that an individual with the above RFC would be able to perform the requirements of representative occupations such as hostess, inspector, and finisher.

## III.   FACTUAL BACKGROUND

Plaintiff, a high school graduate, was 48 years old on her alleged onset date. On October 5, 2011, Plaintiff fractured her neck, back, and ribs when she fell down a flight of approximately twelve steps while under the influence of alcohol. A CT scan revealed transverse process fracture at C7 and transverse process fracture at L3-L4. *Tr.* 250-51. Her active range of motion was within functional limits in all extremities, but she had a limited range of motion in her spine due to pain. *Id.* Following her injury Plaintiff participated in a one-week course of inpatient physical rehabilitation, and was able to ambulate 150 feet without an assistive device and with minimal contact assistance. *Tr.* 248, 257. On discharge, Plaintiff

was able to bathe, dress, and groom herself with modified independence. *Tr.* 256.
Plaintiff declined outpatient physical therapy in favor of a home exercise program.
*Tr.* 248.

On or around December 2011 or January 2012, Plaintiff attempted to return
to work.   After approximately three weeks of work, Plaintiff reported that she
began to experience a new onset of neck pain and upper extremity weakness. *Tr.*
286.   Plaintiff attributed the pain to the physical demands of her job, which
required that she lift objects of various weights, and stand for prolonged periods
with her head down for food preparation. *Id.* On January 6, 2012, Plaintiff began
a new course of physical therapy with the goal of alleviating her pain.   After two
physical therapy sessions in which it was noted that she was making good
progress, Plaintiff was discharged from physical therapy because she refused
further treatment. *Tr.* 306.   Plaintiff stated that her numbness was too severe to
continue with physical therapy and that she wanted to wait for surgery rather than
continue conservative treatment. *Tr.* 307.   Plaintiff also received steroid injections,
which failed to provide her any relief. *Tr.* 381, 497-98.   In June 2012, Plaintiff had
anterior cervical discectomy and fusion surgery. *Tr.* 454-55, 500-01.

Following surgery, Plaintiff reported new onset of lower back pain. *Tr.* 394.
Plaintiff underwent a course of outpatient physical therapy in an attempt to
alleviate her pain.   *Tr.* 537.   Plaintiff attended approximately six scheduled

8

physical therapy sessions between August 22, 2012, and September 22, 2012. During her last session she reported "no real pain" in her lower back. *Tr.* 543. An MRI of Plaintiff's lumbar spine dated October 12, 2012, revealed the impression of mild degenerative disc disease of the lumbar spine at L4-L5 and L5-S1 with foraminal narrowing but without evidence of nerve root compression or distinct evidence of nerve root impingement. *Tr.* 492. Plaintiff was discharged from physical therapy on October 26, 2012, due to her failure to comply with continued visits. *Tr.* 540. In February 2013, Plaintiff pursued steroid injections for her lower back pain.

With respect to her knee impairment, Plaintiff asserts that her problems began shortly after her October 2011 accident. *Tr.* 683. X-rays of Plaintiff's knees taken on September 4, 2012, revealed evidence of prior injury, but were otherwise unremarkable. *Tr.* 483. An MRI performed five days later revealed the impression of patellofemoral and medial compartment osteoarthritis. *Tr.* 488. Plaintiff had arthroscopic surgery on her left knee in December 2012. *Tr.* 592. She reported that her left knee was still painful, despite the removal of several floating bodies. *Tr.* 720, 734. Plaintiff had a second arthroscopic surgery on her left knee in November 2013. *Tr.* 739.

With respect to her carpal tunnel syndrome, the medical evidence of record reflects that Plaintiff's condition emerged on November 11, 2008. *Tr.* 344.

9

Plaintiff reported that it was a repetitive motion injury which developed after thirty days of work as a laborer in a warehouse. *Id.* Plaintiff had right carpal tunnel release surgery in February 2012 and had left carpal tunnel release surgery in March 2012. *Tr.* 443, 493-94, 496. Plaintiff reported rapid improvement in her right hand following release surgery. *Tr.* 566.

Plaintiff also asserts that she developed depression and anxiety after her accident. The medical evidence of record reflects that Plaintiff did complain of anxiety and depression. There is also evidence that reflects the Plaintiff was referred for treatment because of her past history of "heavy drinking." *Tr.* 413. Plaintiff testified that she has not had a drop to drink since her accident. *Tr.* 48. Plaintiff also testified that she sought out mental health services because she was depressed, but stopped attending group sessions when it was recommended that she participate in inpatient substance abuse treatment. *Tr.* 49. Plaintiff continues to manage her depression with medication.

At the hearing, and in activities of daily living questionnaire, Plaintiff reported that her physical and mental impairments continue to preclude her from re-entering the workforce. Plaintiff testified that she experienced pain in her neck, arms, hands, lower back, mid back, hips, and knees. She reported that she is unable to: bend; stand for more than thirty minutes at one time; walk more than three blocks, or for thirty minutes in duration; sit for longer than two and one half

hours; hold her head in a static position; and constantly reach.  Plaintiff also stated that she has great difficulty climbing stairs, stepping in to the bath tub, balancing, and completing tasks.  She also reported that she experiences between two and three panic attacks per week.  Despite these limitations, Plaintiff is able to live alone, prepare simple meals, and drive her mother to the grocery store two times per week.

## IV.   DISCUSSION

Once the ALJ has made a disability determination, it is the responsibility of this Court to independently review that finding. This task requires the application of a specific, well-settled, and carefully articulated standard of review.  Congress has specifically provided that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."   42 U.S.C. § 405(g).

Substantial evidence has been defined as "more than a mere scintilla of proof," *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citation omitted), and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200(3d Cir. 2008) (*quoting Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)).  Therefore, where the ALJ's findings of fact are supported by substantial evidence, this Court is

bound by those findings, even where it "would have decided the factual inquiry differently." *Hartranft,* 181 F.3d at 360.

In her brief, Plaintiff contends that the ALJ exhibited bias in her failure to obtain a voluntary waiver of Plaintiff's statutory right to representation and by failing to allow Plaintiff an opportunity to testify fully.  Plaintiff also contends that many of the ALJ's findings are not supported by substantial evidence. Specifically, Plaintiff asserts that the ALJ erred by discounting a Global Assessment of Functioning (GAF) score, finding several of Plaintiff's mental impairments to be non-severe, and by relying on VE testimony elicited in response to an incomplete hypothetical question.  For the reasons articulated below, we find Plaintiff's arguments to be unavailing.

### A.    ALJ DID NOT FAIL TO OBTAIN A VOLUNTARY WAIVER OF PLAINTIFF'S RIGHT TO REPRESENTATION

Plaintiff contends that the ALJ exhibited bias against Plaintiff when she failed to obtain a voluntary waiver of Plaintiff's right to representation during an ALJ hearing where Plaintiff was represented by a non-attorney.  *Doc.* 14 p. 14. The Social Security Administration sent Plaintiff two notices, one with the denial of each application, informing her that she could get "a friend, lawyer, or someone else" to help her, and that she may be eligible for free legal services.  *Tr.* 106-08, 124-26.  Further, on February 11, 2013, Plaintiff certified that she understood her right to representation when she requested her administrative hearing.  *Tr.* 122-23.

Thereafter, Plaintiff executed an "appointment of representative" agreement with Cheryl Coe, a paralegal, on April 5, 2013. *Tr.* 141. Ms. Coe then appeared on Plaintiff's behalf at an administrative hearing held on February 3, 2014. Plaintiff does not allege that Ms. Coe's performance was in any way deficient, instead she asserts that the ALJ was obligated to obtain a voluntary waiver of representation from Plaintiff because Plaintiff chose to be represented by a non-attorney.

The Social Security Act provides a statutory right to be represented at an ALJ hearing. 42 U.S.C. §406. The Social Security regulations provide that a claimant may appoint either an attorney *or* a non-attorney to be his or her representative in his or her dealings with the Social Security Administration. 20 C.F.R. §§404.1705, 416.1505. If a claimant chooses to appoint a non-attorney as his or her representative, the appointed representative must be: generally known to have good character and reputation; capable of giving valuable help to the claimant in connection with his or her claim; not disqualified or suspended from acting as a representative; and not prohibited by any law from acting as a representative. *Id.* Moreover, the Social Security Administration may refuse to recognize a non-attorney representative that does not meet the above-mentioned criteria. *Id.*

Here, we find that the ALJ was not required to obtain a voluntary waiver of Plaintiff's statutory right to representation because Plaintiff exercised this right. We find that the ALJ properly identified Ms. Coe as a qualified non-attorney that

satisfies Plaintiff's rights under the statutory and regulatory scheme.  Accordingly, we find that Plaintiff's argument lacks merit.

## B.     THE ALJ MET HER AFFIRMATIVE OBLIGATION TO ASSIST THE CLAIMANT IN DEVELOPING THE RECORD

Plaintiff contends that remand is warranted because the ALJ failed to fully develop the record.  *Doc.* 14 p. 14-15.  Plaintiff, however, does not argue that there are any medical records missing.  Instead, she alleges that the ALJ failed to give her the opportunity to testify in full at the hearing, and abruptly concluded the hearing as Plaintiff attempted to offer additional testimony.  Her allegations are based on the following exchange at the end of the administrative hearing:

> ALJ: Okay, I'm going to review the records one more time, and then make a decision.  And then once I have done so, both you and your representative get notified though the mail, okay?  All right, thank you.  And have a safe trip back.
> ATTY: You too.  I hope –
> CLMT: She said she's done?
> ATTY: Yep, we're all done, yeah.

*Tr.* 71.[1]

We find no merit to this argument.  Plaintiff was given ample opportunity to testify about her impairments and symptoms during the hearing.  The transcript of the administrative hearing includes approximately 21 pages in which Plaintiff testified about her daily activities, educational and vocational background, physical

---

[1] We note that in the transcript of the administrative hearing, the abbreviation "ATTY" refers to Plaintiff's non-attorney representative, Ms. Coe.

limitations, treatment history, medication side-effects, pain, and other symptoms. At the conclusion of this testimony Plaintiff's representative, Ms. Coe, stated that she had "nothing further." *Tr.* 62. Furthermore, the record in this case includes over 500 pages of medical records, including two consultative examinations commissioned by the Social Security Administration. Additionally, Plaintiff fails to allege what information, if any, she was not given the opportunity to provide to the ALJ before the ALJ issued her decision that may have altered the ALJ's decision.

Last, without deciding the issue of whether Plaintiff properly raised a claim of ALJ bias, we find that, based on the above, Plaintiff has failed to present any evidence of ALJ bias. The record reflects that ALJ Wolfe afforded Plaintiff a full and fair hearing with the assistance of a qualified non-attorney representative, and that the ALJ's decision was based on a fully developed evidentiary record.

## C. THE ALJ PROPERLY EXPLAINED HER DECISION TO DISCOUNT PLAINTIFF'S GAF SCORES

The record before the ALJ contained two GAF scores of 50, assessed by social workers in September and October of 2012. *Tr.* 413-415, 432. Plaintiff insists that the ALJ erred by failing to explain what evidence she relied on to reject these GAF scores. *Doc.* 14 p. 18. In response the Commissioner asserts that the ALJ discussed Plaintiff's GAF scores and explained her rationale for discounting the GAF scores of record. *Doc.* 15 p. 24.

A GAF score is a numerical summary of a clinician's judgment of an individual's psychological, social, and occupational functioning on a hypothetical continuum of mental health on a scale of one hundred.[2]  *See Diagnostic and Statistical Manual of Mental Disorders*, 32-34(4th ed. text rev. 2000) (hereinafter "DSM-IV").  The Social Security Administration has recognized that a claimant's GAF score is not considered to have a direct correlation to the severity requirements.  *Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury*, 65 FR 50746-01, 50764-65 (Aug. 21, 2001).  Thus, a GAF score of 50, even if credited, does not require a finding of disability.  *See e.g. Gilroy v. Astrue*, 31 Fed. App'x 714, 715-16 (3d Cir. 2009)(noting that a GAF score of 45, if credited, would not require a finding of disability).  However, the Social Security Administration had clarified that, because the GAF is the scale

---

[2] A GAF score of 21-30 represents behavior considerable influenced by delusions or hallucinations or serious impairment in communication or judgment or inability to function in almost all areas.  DSM-IV at 34.  A GAF score of 31-40 represents some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood.  *Id.*  A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning.  *Id.*  A GAF score of 51-60 represents moderate symptoms or any moderate difficulty in social, occupational, or school functioning.  *Id.*  A GAF score of 61-70 represents some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well with some meaningful interpersonal relationships.  *Id.*  A GAF score of 71-80 represents transient symptoms, if present, and expectable reactions to psychosocial stressors or no more than slight impairment in social, occupational, or school functioning.  *Id.*

used by mental health professionals to "assess current treatment needs and provide a prognosis" it should not be ignored.  65 FR 50746-01, 50764-65.

In her decision, the ALJ gave little weight to the GAF scores of 50 because they reflected a "snap shot" of Plaintiff's condition at a particular moment of time without any support in the longitudinal treatment records.  The ALJ also noted that a GAF score 50 is inconsistent with the clinical evidence and Plaintiff's sparse and conservative treatment history, which consists of records from approximately two intake evaluations for mental health and substance abuse treatment by social workers and medication management.  Accordingly, based on the notable lack of mental health treatment in the record, we find that the ALJ's conclusion that the GAF assessment of 50 is inconsistent with Plaintiff's conservative and routine mental health treatment is supported by substantial evidence.

### D.  THE ALJ PROPERLY FOUND THAT PLAINTIFF'S MENTAL IMPAIRMENTS WERE NON-SEVERE

Plaintiff contends that the ALJ erred by finding that Plaintiff's mental impairments were medically determinable but non-severe at step two, and that this error warrants remand.  *Doc.* 14 pp. 18-19.  In response, the Commissioner asserts that that ALJ's determination that Plaintiff's mental impairments are non-severe is supported by substantial evidence.  *Doc.* 15 p. 20.

At step two of the sequential evaluation process, the ALJ considers whether a claimant's impairments are (1) medically determinable or non-medically

determinable, and (2) severe or non-severe; this step is essentially a threshold test. 20 C.F.R. § 404.1520. If a claimant has no impairment or combination of impairments that significantly limits his or her physical or mental abilities to perform basic work activities, i.e. a medically determinable severe impairment, the claimant will be found "not disabled" and the evaluation process ends at step two. *Id.*; *see also* SSR 85-28, 1985 WL 56856 at *3 ("An impairment or combination of impairments is found 'not severe' and a finding of 'not disabled' is made at [step two] when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered"). If, however, the claimant has *any* medically determinable impairment that is severe, the evaluation process continues. *Id.* The Third Circuit has observed that "[t]he burden placed on an applicant at step two is not an exacting one." *McCrea v. Commissioner of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). Moreover, any doubt as to whether a claimant has made a sufficient showing of severity at step two should be resolved in his or her favor. *Id.*

The ALJ evaluates mental impairments based on the steps outlined in 20 C.F.R. §§404.1520 and 416.920, and by using a special technique outlined in 20 C.F.R. §§404.1520a and 416.920a. This technique requires that the ALJ must (1)

determine whether the alleged mental impairment is medically determinable, and (2) rate the degree of functional limitation resulting from the impairment based on four broad functional areas.   20 C.F.R. §§404.1520a, 416.920a.   The four broad functional areas are: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation.   20 C.F.R. §§404.1520a(c)(3), 416.920a(c)(3).   If the ALJ rates the degree of the claimant's limitation as "none" or "mild" in the first three areas, and "none" in the fourth area then the alleged mental impairment will be found not severe unless there is evidence to the contrary.[3]

Here the ALJ found that Plaintiff had a mild limitation in activities of daily living, social functioning, and concentration, persistence, or pace, and no episodes of decompensation.  *Tr.* 25-26.  Plaintiff asserts that the ALJ failed to explain her basis for these findings.  We disagree, and find that the ALJ not only explained the basis for her findings, but that her findings are also supported by substantial evidence.

Activities of daily living include, but are not limited to, such activities as "cleaning, shopping, cooking, taking public transportation, paying bills,

---

[3] The ALJ rates the degree of limitation in the first three areas based on a five point scale: none, mild, moderate, marked, and extreme.  20 C.F.R. §§404.1520a(c)(4), 416.920a(c)(4).  The fourth functional area is assessed based on a four point scale: none, one or two, three, four or more.  *Id.*  The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. *Id.*

maintaining a residence, carrying appropriately for your grooming or hygiene, using telephones and directories, and using a post office." 20 C.F.R. Part 404, Subpart P, Appendix 1 §12.00C1. Here, the ALJ found that, despite Plaintiff's report that she had a lack of desire to maintain her personal hygiene, cook, and do housework, the record reflects that she was still able to accomplish these activities to some extent. *Tr.* 25. The record reflects that Plaintiff stated that she is able to: live alone, *Tr.* 43; take care of her dog and visit with her granddaughter, *Tr.* 55, 58, 199; take care of her personal needs or grooming without reminders, *Tr.* 200; prepare simple meals, *Tr.* 56, 200; do some housework, *Tr.* 47; drive, *Tr.* 44, 202; and shop in stores, *Tr.* 47, 202. Accordingly, we find that the ALJ's determination that Plaintiff has only mild limitations in this area is supported by substantial evidence.

Social functioning refers to "an individual's capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers." 20 C.F.R. Part 404, Subpart P, Appendix 1 §12.00C2. Here, the ALJ found that Plaintiff had a mild limitation in social functioning because, despite the fact that she does not spend time with friends, she still goes shopping with her mother, to her medical appointments, and out to dinner with her boyfriend. *Tr.* 25. The

ALJ's characterization of Plaintiff's social activities is supported by the record. Plaintiff admitted that she: shops with her mother twice per week, *Tr.* 202; goes out to dinner once per month, *Tr.* 62; and enjoys spending time with her granddaughter. *Tr.* 57-58. Plaintiff also attributed her quiet social life to the fact that most of her former friends drink a lot, which is "not what she needs." *Tr.* 207; *see also Tr.* 582 (describing her former friends as "just boozing buddies"). Consultative examiner, Dr. Sarah Long, noted that Plaintiff had "good social skills." *Tr.* 581. Accordingly we find that the ALJ's determination is supported by substantial evidence.

Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks. 20 C.F.R. Part 404, Subpart P, Appendix 1 §12.00C3. Here, the ALJ found that, Plaintiff was able to follow instructions, do tasks and maintain attention and that Plaintiff testified that she was able to watch movies and follow spoken instructions. The ALJ's assessment is supported by the clinical observations of Dr. Long, who observed that Plaintiff was able to complete serial threes accurately, and repeat three objects immediately and after five minutes. *Tr.* 581-82. Dr. Long also opined that Plaintiff is able to follow and understand directions, perform simple or complex tasks independently, learn new tasks, and

maintain attention and concentration. *Tr.* 582. Accordingly we find that the ALJ's determination is supported by substantial evidence.

With respect to repeated episodes of decompensation, the ALJ accurately notes, and Plaintiff does not dispute, that the record does not contain any evidence of psychiatric hospitalizations. *Tr.* 26.

Furthermore, an ALJ's failure to find a medical condition severe at step two will not render a decision defective if one or more other medical conditions were found severe at step two, as she did in this case. *See e.g. Salles v. Comm'r of Soc. Sec.*, 229 Fed.Appx. 140, 145 n. 2. (3d Cir. 2007)(*citing Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). The Social Security regulations contemplate that, in assessing a claimant's RFC prior to step four, the ALJ considers the symptoms of all medically determinable impairments, whether they are found severe or non-severe at step-two. 20 C.F.R. §§404.1545, 416.945. Here, we find that the ALJ adequately accounted for all of Plaintiff's credibly established limitations in her RFC assessment. Thus, even if the ALJ had erred in finding these impairments to be non-severe, any such error would be deemed harmless in this case.

### E.   THE ALJ'S DECISION AT STEP FIVE IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Last, Plaintiff contends that the hypothetical question posed to the VE by the ALJ failed to account for the credibly established limitation that Plaintiff would

allegedly be "off task" for 20% of each workday. *Doc.* 14 p. 20. In response the Commissioner asserts that the ALJ properly concluded that this limitation was not credibly established in the record. *Doc.* 15 p. 26.

At the outset, we note that as an evidentiary matter, the proper formulation of hypothetical questions determines whether the VE's response can be considered as substantial evidence supporting an ALJ finding at step five. *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002)("Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence.")(citations omitted). This does not mean, however, that an ALJ is required to submit every impairment alleged by the claimant to the VE. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005)("the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations."). Here, Plaintiff's representative did ask the VE whether an individual who would be off task 20% of the day could engage in substantial gainful employment. The VE responded that such a limitation would preclude all employment. *Tr.* 71. However, we find that substantial evidence supports the ALJ's determination that this limitation was not credibly established in the record. As discussed above, the consultative examiner determined that Plaintiff is able to understand directions, complete simple or complex tasks independently, and

maintain attention and concentration.  *Tr.* 582.  In the same report, the consultative examiner opined that Plaintiff's psychiatric problems were not significant enough to interfere with her ability to function on a regular basis.  *Id.*

## V.    RECOMMENDATION

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that the final decision of the Commissioner denying Plaintiff's applications for benefits be **AFFIRMED.**

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this 25th day of June 2015.

*S/Susan E.  Schwab*
Susan E. Schwab
United States Magistrate Judge